UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| MARTIN LEIB, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 3:10-CV-396 |
| ) | (VARLAN/GUYTON) |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding the disposition by the District Court of the Plaintiff's Motion For Summary Judgment and Memorandum in Support [Docs. 13 and 14] and the Commissioner's Motion For Summary Judgment and Memorandum in Support [Docs. 23 and 24], along with Plaintiff's Reply Memorandum [Doc. 25]. Plaintiff Martin Leib seeks judicial review of the decision of the Administrative Law Judge ("ALJ"), the final decision of the Defendant Commissioner.

The parties appeared before the Court to address this case on October 6, 2011. Attorneys Emma Drozdowski and Kenneth Miller were present representing the Plaintiff, who was also present in the courtroom. Attorney Loretta Harber was present representing the Commissioner, and Attorney Carole Kohn, who serves as regional counsel for the Commissioner, was present via telephone.

## I. BACKGROUND

The undersigned reviewed the procedural posture of this case and the applicable law in its previous Memorandum and Order. The standard of review is familiar to the Court and the parties, and there is no need to repeat it here. The Court will, however, briefly review the ALJ's findings, which were:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2011.
>
> 2. The claimant has not engaged in substantial gainful activity since October 18, 2006, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. The claimant has the following severe impairments: degenerative disc disease and major depressive disorder (20 CFR 404.1520(c) and 416.920(c).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform less than the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). The claimant can only occasionally climb, balance, stoop, crouch, kneel or crawl. In addition, he can understand and remember for simple and low-level detailed tasks and can sustain adequate persistence and pace for the above tasks. He may experience some but not substantial difficulty dealing with the general public, co-workers and supervisors and can, with some difficulty adapt and respond to changes in the routine work setting. He can make and set simple work-related plans and goals independently but may have difficulty with more complex decision making.
>
> 6. The claimant is unable to perform any past relevant work (20 CFR 404.15.65 and 416.965).

2

Case 3:10-cv-00396-TAV-HBG   Document 28   Filed 10/17/11   Page 2 of 12   PageID #: 143

7. The claimant was born on June 17, 1970 and was 36 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education and is able to communication in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 85-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from October 18, 2006 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

[Tr. 14-22].

## II. ANALYSIS

The Plaintiff claims disability based on chronic low back pain and major depression. The Plaintiff's position is that the ALJ failed to properly evaluate the opinions of the Plaintiff's treating physicians, Trent Cross, M.D., an internist, Stephen Natelson, M.D., a neurosurgeon, and John Robertson, M.D., a psychiatrist. The Plaintiff argues that the ALJ failed to give good reasons for not giving controlling weight to the findings and opinions of these doctors.

### A.     Trent Cross, M.D., and Stephen Natelson, M.D.

Initially, the Court would note that the Commissioner did not dispute that Trent Cross, M.D., and Stephen Natelson, M.D., were the Plaintiff's treating physicians. Based upon the record and this concession, the Court finds that Dr. Cross and Dr. Natelson were treating physicians.

The Commissioner argues that the ALJ was not required to "give good reasons" for not giving weight to the opinions of these physicians, because said physicians did not actually render "medical opinions," only treatment notes and other records. In making this argument, the Commissioner analogizes "medical opinions" with "medical reports," the (suggested) components of which are set forth in 20 C.F.R. § 404.1513(b). The Commissioner asserts that the medical opinions in this case do not meet the definition of "medical reports," because they contain no specific limitations on what the Plaintiff "was able to do." Therefore, the Commissioner argues, the ALJ had no duty to "adopt or otherwise discuss" them, and thus, any failure by the ALJ to do so can not constitute a lack of substantial evidence to support the ALJ's disability determination [Doc. 24 at 14-16]. At the hearing Attorney Kohn reiterated this argument and took the position that neither Dr. Natelson nor Dr. Cross had produced a single medical opinion in this case.

Under the Social Security Act and its implementing regulations, if a treating physician's opinion as to the nature and severity of an impairment is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record, it must be given controlling weight. 20 C.F.R.§§ 404.1527(d)(2) and 416.927(d)(2). But where an opinion does not garner controlling weight, the appropriate weight to be given to an opinion will be determined based upon the following factors: length of treatment,

4

frequency of examination, nature and extent of the treatment relationship, amount of relevant evidence that supports the opinion, the opinion's consistency with the record as a whole, the specialization of the source, and other factors which tend to support or contradict the opinion. 20 C.F.R.§§ 404.1527(d)(2) and 416.927(d)(2).

When an ALJ does not give a treating physician's opinion controlling weight, the ALJ must always give "good reasons" for the weight given to a treating source's opinion in the decision. 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2). A decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for the weight." Soc. Sec. Rul. 96-2p, 1996 WL 374188 at *5 (1996). Nonetheless, the ultimate decision of disability rests with the ALJ. King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).

An allegation that the Commissioner has violated the treating physician rule is, perhaps, the most common error alleged in the Social Security appeals that come before the undersigned. In this case, however, the Commissioner has taken the unique stance that the treating physician rule has not been triggered in this case because no medical opinions were submitted by the Plaintiff's treating physicians. The Court of Appeals for the Sixth Circuit in Monateri v. Commissioner of Social Security, 2011 WL 3510226 (6th Cir. Aug. 11, 2011), recently declined to either endorse or reject a distinction between "medical notes" and "medical opinions." The Court finds that it is likewise unnecessary to endorse

5

or reject the distinction proposed by the Commissioner in this case, because regardless of the label assigned to these findings, the ALJ did not comply with the treating physician rule.

Initially, the Court finds that the ALJ did not state that he found the notes made by Dr. Natelson to be medical notes rather than medical opinions and that he, therefore, did not credit them. Instead, he selectively cited to Dr. Natelson's records, without supplying any explanation or "good reasons" for discounting Dr. Natelson's observations and findings.

In discussing Dr. Natelson's records, the ALJ stated:

> The medical record is replete with evidence indicating the claimant is status post back surgery. Treatment notes from Dr. Stephen Natelson the claimant's treating physician reveal that the doctor is pleased with the outcome and certain that the claimant will continue to improve (Exhibit 2F).
>
> In a follow up examination in May, 2007 Dr. Natelson opined that the claimant's x-ray "looks pretty good". His treatment notes indicate that the claimant lost his health insurance and is unable to take advantage of physical therapy or have follow up MRI. He also noted the claimant is depressed (Exhibit 3F).

[Tr. 19]. The note cited by the ALJ in support of his finding states, "He did get an x-ray today and it looks pretty good." [Tr. 253]. On the next page of the record, in a work status report from the same day, however, Dr. Natelson selected "No work at this time" from four options describing work status, including "Full duty with no restrictions," "Full

6

duty with restrictions listed below," and "Light duty with restrictions listed below." [Tr. 254].

To rely on a portion of the record stating that the Plaintiff "looks pretty good" without noting that the Plaintiff's physical capacity was judged to be so minimal that he could not work is not an appropriate weighing of Dr. Natelson's opinion. Moreover, the Commissioner's argument and *post hac* reasoning for the ALJ's treatment of these opinions does not cure the reversible error committed. As the Court of Appeals has explained, "A court cannot excuse the denial of a mandatory procedural protection simply because, as the Commissioner urges, there is sufficient evidence in the record for the ALJ to discount the treating source's opinion and, thus, a different outcome on remand is unlikely." Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 546 (6th Cir. 2004).

In reference to Dr. Cross, the ALJ stated, "Most persuasive is the notation in the treating records from Mountain People's Health council that the claimant's pain and anxiety are well controlled by medication." [Tr. 20]. The ALJ made a generic citation to twenty-three pages of medical records from the Plaintiff's visits with Dr. Cross at the Mountain People's Health Council. [Tr. 597-620].

Dr. Cross saw the Plaintiff on approximately eighteen different occasions between July 2006 and May 2009. [Tr. 456-78, 597-620]. Dr. Cross consistently noted that the Plaintiff reported low back pain, evidenced by tenderness upon palpitation of the lumbar

7

and thoracic spine and muscle spasms. [See, e.g., 465, 600, 605]. Dr. Cross also prescribed Xanax, Ambien, and Paxil, for the Plaintiff's depression and anxiety. [See, e.g., 465, 466, 606, 607].

The ALJ discounted Dr. Cross's treatment notes and findings to at least a degree, as he found that the Plaintiff was capable of lifting that would be inconsistent the Plaintiff's back pain and symptoms. Nonetheless, the ALJ did not explain the portion of the dozens of pages of Dr. Cross's notes he found to be persuasive. He did not explain the weight he afforded to Dr. Cross's findings regarding the Plaintiff's back pain or his findings regarding anxiety and depression. The undersigned finds that ALJ did not provide "good reasons" for discounting Dr. Cross's opinion, and again, the Commissioner's argument and *post hac* reasoning for the ALJ's treatment of this opinion does not cure the reversible error committed.

Based upon the foregoing, the undersigned finds that this case should be remanded to the Commissioner to properly address and explain the weight afforded to Dr. Natelson's and Dr. Cross's findings.

### B. John Robertson, M.D.

The Plaintiff also argues that the ALJ also failed to comply with the treating physician rule in addressing the findings of John Robertson, M.D. [Doc. 14 at 12]. In

8

contrast to his position as to Dr. Natelson and Dr. Cross, the Commissioner concedes that Dr. Robertson's treatment records included medical opinions. The Commissioner, however, takes the position that Dr. Robertson was not the Plaintiff's treating position, and thus, was not entitled to special deference under the treating physician rule.

The ALJ described the Plaintiff's visits with Dr. Robertson and Dr. Robertson's findings, as follows:

> The claimant was seen by Dr. John Robertson on August 18, 2009 for a follow up examination. Dr. Robertson noted that the claimant had continuing improvement in his psychiatric symptoms. Since the claimant no longer had health insurance, he had been unable to continue using some of his medications. Dr. Robertson was made aware that the claimant had filed for social security disability benefits and that his hearing was on September 2, 2009. Dr. Robertson was hopeful that the claimant could start receiving Medicare.

[Tr. 20].

The Plaintiff specifically takes issue with the lack of weight the ALJ afforded to the "Medical Assessment of Ability to Do Work-Related Activities (Mental)," completed by Dr. Robertson on September 22, 2009. In this worksheet, Dr. Robertson indicated that the Plaintiff had, *inter alia*, poor abilities to relate to co-workers, deal with the public and stress, and maintain attention and concentration. [Tr. 653-54]. Dr. Robertson's restrictions were, generally, more severe than those endorsed by the ALJ in his residual functional capacity finding.

The Court of Appeals for the Sixth Circuit has explained that a handful of visits to a physician will not necessitate finding the physician is a treating physician entitled to special deference. On the issue, the Court of Appeals stated:

> [A] plethora of decisions unanimously hold that a single visit does not constitute an ongoing treatment relationship. See, e.g., White v. Barnhart, 415 F.3d 654, 658 (7th Cir.2005) (occupational medicine specialist who evaluated claimant only once was not a treating physician). Indeed, depending on the circumstances and the nature of the alleged condition, two or three visits often will not suffice for an ongoing treatment relationship. See, e.g., Cunningham v. Shalala, 880 F.Supp. 537, 551 (N.D. Ill. 1995) (where physician saw claimant five times in two years, it was "hardly a foregone conclusion" that his opinion should be afforded great weight).

Kornecky v. Comm. of Soc. Sec., 167 Fed. App'x 496, 506-507(6th Cir. 2006)

The Court finds that the issue of whether Dr. Robertson was a treating physician at the time this worksheet was completed is questionable. The visit notes in the record are from two visits in August, 2009, though they reference treatment in July 2009, [Tr. 647-651]. Nonetheless, the Court finds that in this case Dr. Robertson was actively treating the Plaintiff, and thus, affording him treating physician status would be consistent with the treating physician rule's goal of affording weight to opinions that represent longitudinal views of a claimant's history, see 20 C.F.R. § 404.1527(d)(2). Based upon these visits, the thorough discussion of Dr. Robertson's findings during the visits, and the circumstances of this case, the Court will find that Dr. Robertson was a treating physician.

As stated above, the opinion of a treating physician is only entitled to special weight and deference where it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.

The Commissioner argues that the "ALJ could consider the possibility that Dr. Robertson was trying to help [the Plaintiff get Medicare or Social Security benefits]," and the Commissioner notes that the record did not contain evidence of the bi-weekly appointments with Dr. Robertson that the Plaintiff described at the hearing. [Doc. 24 at 20]. The ALJ did not, however, state that he was discounting Dr. Robertson's opinions on either of these bases. A review of the record could well yield a conclusion that Dr. Robertson's findings in the "Medical Assessment" were not consistent with the medically acceptable clinical and laboratory diagnostic techniques recorded in the case, but the ALJ did not make such a finding.

The undersigned finds that the ALJ did not comply with his statutory obligation to state his reasons for discounting Dr. Robertson's testimony, and therefore, the undersigned will recommend that this case be remanded to consider and explain the weight to be afforded to the "Medical Assessment."

11

## III. CONCLUSION

Based upon the foregoing, the undersigned finds that the ALJ did not comply with the treating physician rule as incorporated in 20 C.F.R.§§ 404.1527and 416.927. Therefore, the undersigned **RECOMMENDS**[1] that the Plaintiff's Motion For Summary Judgment **[Docs. 13]** be **GRANTED** and the Commissioner's Motion For Summary Judgment **[Doc. 23]** be **DENIED**. The undersigned **RECOMMENDS** that this case be **REMANDED** to the Commissioner for further analysis consistent with this opinion.

Respectfully Submitted,

s/ H. Bruce Guyton
United States Magistrate Judge

---

[1] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).